IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TROY OLMSTED,

                                Plaintiff,

      v.

MATTHEW FRANK, RICHARD VICTOR,
SGT. STELLINGS, WILLIAM POLLARD,
PETE ERICKSEN, MARK KILUELKE,
LT. SWIEKATOWSKI, and ELLEN RAY;
all in their official and personal capacities

                                Defendants.

OPINION and ORDER

08-cv-309-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case was originally filed in state court and removed to this court. Plaintiff Troy Olmsted objected vigorously to removal, attempting several tactics to persuade the court to return the case to state court. After I denied his motion to remand because he raised claims under 42 U.S.C. § 1983, plaintiff made statements suggesting that he never meant to raise the federal claims appearing in his complaint. In light of these statements, I ordered plaintiff to advise the court whether he wished to dismiss his federal claims voluntarily. Now he has changed his tune, saying that he does want to proceed with his federal claims, but wants the court to wait another 20 days to allow him to amend his complaint before screening his

1

pleading because he believes that the removal of his case to this court created a higher standard and this court's severance of his separate claims into different lawsuits "weakened" his case. Because I am not persuaded that a good reason exists for further delay in this case, I will screen plaintiff's complaint pursuant to 28 U.S.C. § 1915A now. Section 1915A requires the court to dismiss plaintiff's complaint if it is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. Plaintiff is a pro se litigant, so his complaint will be construed liberally as it is reviewed for these potential defects. Haines v. Kerner, 404 U.S. 519, 521 (1972).

All of plaintiff's claims will be dismissed. I conclude that plaintiff's claim that defendants violated his free speech, equal protection and Eighth Amendment rights by placing him in segregation and transferring him to the Wisconsin Secure Program Facility should be dismissed because there is no basis in the allegations for these claims. Likewise, I conclude that plaintiff's claim that defendants violated his due process rights by failing to afford him adequate process during a disciplinary proceeding after which he was placed in segregation at the Wisconsin Secure Program Facility must be dismissed because he has no constitutional right to process before being placed in a definite period of segregation, even if he is forced to spend it at the Wisconsin Secure Program Facility.

From plaintiff's complaint I draw the following allegations of fact.

ALLEGATIONS OF FACT

A.  Parties

At all times relevant to this complaint, plaintiff Troy Olmsted was an inmate at the Green Bay Correctional Institution or the Wisconsin Secure Program Facility.

At times relevant to this complaint, defendant Matthew Frank was the secretary of the Wisconsin Department of Corrections, responsible for the operations of all adult institutions and the final decisionmaker in the inmate complaint review system.  Defendant Richard Victor is employed by the Wisconsin Department of Justice as an Assistant Attorney General.  As part of his duties he represents the Department of Corrections in civil matters and investigates claims and defenses of his clients.

Defendant William Pollard is the warden of the Green Bay Correctional Institution. He is responsible for the operation of the institution, including the custody, care and discipline of the inmates at the institution.  Defendant Kiluelke is the librarian at the Green Bay Correctional Institution.

Defendant Pete Ericksen is the security director, defendant  Lt. Swiekatowski is a security supervisor and Sergeant Stellings is a captain at the Green Bay Correctional Institution.  These defendants are responsible for the security of the inmates and supervise staff and investigate conduct violations and determine appropriate disciplinary measures.

Defendant Ellen Ray is the inmate complaint examiner and the records custodian for

3

the Wisconsin Secure Program Facility. Her duties include investigating complaints and compiling records for judicial review.

### B. Conduct Report for Alleged Involvement in Smuggling Intoxicants

On September 26, 2005, plaintiff was placed in temporary lock up during an investigation into the introduction of intoxicants into the Green Bay Correctional Institution. On September 27, 2005, plaintiff was given a conduct report #CR 1687515, charging him with possession of contraband and theft and damage or alteration of property for his alleged involvement in a scheme to introduce intoxicants using the "teddy bear project."

Plaintiff wrote defendants Ericksen, Pollard and Frank several times, protesting innocence. On or about September 30, 2005, at defendant Ericksen's direction, an officer Langtang went to plaintiff's cell and told him to turn over his copy of the conduct report, explaining that there was some error and that defendant Ericksen wanted to see the report. Langtang promised that the report would be returned shortly, but it was never returned.

On October 13, 2005, plaintiff's "staff advocate" came to his cell door and told him that defendant Ericksen had dismissed the conduct report. Plaintiff was still in temporary lock up. Rather than release plaintiff from lock up, defendant Ericksen directed defendant Swiekatowski to "re-charge" plaintiff with conduct report CR 1753816 for the same

4

incident. The conduct report included "changed wording" and added a charge for possession of intoxicants.

Plaintiff filed a complaint in the inmate complaint review system objecting to issues related to the conduct reports, but his complaint was rejected. The rejection was upheld by defendant Pollard. The basis for the rejection was that the original conduct report was "lost" and there was no evidence that the charges overlapped.

Throughout September and October 2005, plaintiff sent exhibits to the law library to be copied and made many requests for case law and a rule book. He paid for the copies and his account was charged, but no copies were delivered to him. Plaintiff was informed that defendant Ericksen had contacted the library and directed defendant Kiluelke to route all of plaintiff's materials to him instead. Plaintiff filed a complaint in the inmate complaint review system, complaining that defendant Ericksen was stealing his exhibits, evidence and case law to prevent him from preparing a case and to learn of plaintiff's strategy. The inmate complaint examiner investigated the complaint and ordered the institution to refund the money charged to plaintiff's account. From the time of plaintiff's placement in temporary lockup until his disciplinary hearing, he did not have access to a Department of Corrections handbook, legal copies, case law or legal assistance.

Plaintiff sought the legal assistance of inmate Bryce Garrett to help him discover facts and prepare a defense against the allegations asserted in the conduct report. Sometime in

early October 2005, defendant Ericksen ordered that all mail between plaintiff and Garrett be routed to him rather than delivered to plaintiff. Plaintiff filed a complaint in the inmate complaint review system objecting to defendant Ericksen's interference with his mailing to and from Garrett. The complaint was "affirmed" and the inmate complaint examiner found that there was an unreasonable delay in the mail. The examiner ordered that defendant Ericksen not hold the mail longer than five days. Defendant Ericksen ignored this order.

On October 31, 2005, plaintiff attended a disciplinary hearing held by defendant Stellings. Plaintiff asserted at the hearing that this was the second conduct report for the same incident and that security was withholding evidence and case law. In addition, plaintiff showed Stellings statements and other exculpatory evidence that "cleared" him of wrongdoing. Finally, plaintiff pointed out that the conduct report used at the hearing was not the one plaintiff was given.

Defendant Stellings could not locate the witness form and was told by staff advocate Vincellet that one had been filed. Defendant Stellings stated that he was not concerned about missing evidence or due process and found plaintiff guilty and sentenced him to eight days' adjustment segregation and 360 days' program segregation.

Plaintiff timely appealed Stellings's decision to the warden. Defendant Pollard denied the appeal on December 1, 2005. Plaintiff filed a grievance related to Stellings's decision, which was dismissed on appeal. However, the charge of possession of contraband was

6

dismissed on appeal.

On December 17, 2005, plaintiff was brought before the Program Review Committee. Defendant Swiekatowski, the author of the initial conduct report related to the teddy bear project, was on the Program Review Committee. The committee decided to send plaintiff to the Wisconsin Secure Program Facility to serve his segregation sentence. (In his original complaint, plaintiff does not explain the purpose of his transfer to the Wisconsin Secure Program Facility; however, in an amended complaint filed in a separate case, No. 08-cv-439-bbc, dkt. #10, plaintiff explained that he was sent to the Wisconsin Secure Program Facility "to serve a segregation sanction imposed by [the] Green Bay Correctional Institution").

Plaintiff made many open record requests for a copy of the conduct report used at the hearing October 31 disciplinary hearing, but all requests were ignored. In addition, plaintiff requested an entire copy of the case file and found that many of his exculpatory exhibits and evidence were missing from the record. After he arrived at the Wisconsin Secure Program Facility, plaintiff was granted a supervised "file review." During the review, plaintiff discovered that the original "case file" conduct report was not in the file.

After two additional open records requests were ignored, plaintiff filed a complaint in the inmate complaint review system alleging that the conduct report was being withheld to thwart review and prevent plaintiff from showing deception and an alteration of the report. Defendant Ellen Ray recommended dismissal of the complaint and her son, John

7

Ray, upheld the dismissal.

On March 15, 2006, plaintiff was removed from his cell for a cell search at the request of the Department of Justice. During the search, staff at Wisconsin Secure Program Facility removed plaintiff's copy of the "teddy bear project" conduct report, made copies of it and then returned it.

On April 13, 2006, plaintiff filed a common law writ of certiorari in the Circuit Court for Dane County. The writ was issued by the court and defendant Ray filed a return on May 10, 2006. The return was missing some of plaintiff's most exculpatory exhibits and evidence. However, the return did include a "case file" conduct report, even though it had been missing before. Plaintiff moved to strike the conduct report, contending that it was not the "original" and that it may have been a doctored version, with the bottom of the conduct report used at the hearing pasted to the top of a copy of the conduct report served upon plaintiff.

Defendant Victor represented to the state court that he had investigated the issue and that the conduct report submitted was in fact the original. Plaintiff continued to press the issue, offering evidence that the document had been altered and that defendant Victor knew it. On July 26, 2006, defendants expunged the findings of guilt from plaintiff's records.

OPINION

8

Plaintiff recites a laundry list of constitutional rights that he believes defendants violated, but many are not implicated by the facts he alleges. For example, he contends that by placing him in segregation and the Wisconsin Secure Program Facility, defendants subjected him to cruel and unusual punishment and violated his rights to equal protection and free speech. However, plaintiff alleges no facts from which an inference may be drawn that the physical conditions of segregation or the Wisconsin Secure Program Facility were anything more than ordinary prison conditions, or that he was treated differently from others similarly situated or that his speech rights were interfered with in any way. Thus, these claims will be dismissed for failure to state a claim upon which relief may be granted.

The allegations in the complaint are directed primarily at plaintiff's concern that he was found guilty of rule violations he did not commit because he was not given a fair opportunity to present his side of the story. This claim can be analyzed as a claim that defendants violated plaintiff's procedural due process rights.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty or property without due process of law." U.S. Const. Amend. XIV. Section 1, article 1 of the Wisconsin Constitution affords the same protections as that of the federal due process clause, Chicago & N.W. Railway Co. v. La Follette, 43 Wis. 2d 631, 643, 169 N.W.2d 441, 446 (1969); therefore, to the extent plaintiff's due process claims rise or fall, so do his state constitutional claims.

9

A procedural due process claim against government officials requires proof of inadequate procedures as well as interference with a liberty or property interest. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). In the absence of a protected liberty or property interest, "the state is free to use any procedures it chooses, or no procedures at all." Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). Therefore, the first question in any due process analysis is whether a protected liberty or property interest has been infringed.

In the prison context, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-484 (1995). Plaintiff contends that defendants violated his due process violations by subjecting him to flawed disciplinary proceedings for his alleged violation in the "teddy bear project." As a result, plaintiff was subjected to eight days' adjustment segregation and 360 days' program segregation, some of which he was required to serve at the Wisconsin Secure Program Facility after he was transferred there.

Plaintiff's claim does not meet the demanding Sandin standard. Although long term segregation status may seem both "atypical and significant" to plaintiff, the Supreme Court has held the opposite. Under Sandin, due process is not implicated in the prison setting

10

until there is a "substantial *incremental* deprivation" of liberty beyond those limitations considered ordinary incidents of prison life. Wagner v. Hanks, 128 F.3d 1173, 1174 (7th Cir. 1997) (emphasis in original). When the action a plaintiff challenges is solely his confinement in segregation "for a period that does not exceed the remaining term of the prisoner's incarceration," the court of appeals has stated that "it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty." Wagner, 128 F.3d at 1176. This is because due process is implicated only for treatment that is "atypical and significant" in relation to "ordinary incidents of prison life." Sandin, 515 U.S. at 483-84.

It is commonplace for prisoners to be placed in segregation for a number of reasons unrelated to discipline, making occasional segregation an "ordinary incident of prison life." Wagner, 128 F.3d at 1176. Regardless how one-sided or unfair petitioner's disciplinary hearing was, it did not violate petitioner's due process rights because petitioner had no liberty interest in staying out of segregation. Under Sandin, placement in segregation is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; Holly v. Woolfolk, 415 F.3d 678 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process").

It is true that plaintiff was forced to serve at least some of his segregation in the

11

Wisconsin Secure Program Facility. In <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005), the Supreme Court held that the conditions in an Ohio supermaximum facility were sufficiently "atypical and significant" to rise to the level of deprivation of liberty under <u>Sandin</u>. Some transfers from a general population facility to the Wisconsin Secure Program Facility might meet the <u>Sandin</u> standard. <u>Lagerstrom v. Kingston</u>, 463 F.3d 621, 623 (7th Cir. 2006) (describing conditions at Wisconsin Secure Program Facility as "draconian"). However, in <u>Wilkinson</u>, the Court relied heavily on two factors for its conclusion that transfer to the Ohio supermax was different from placement in segregation: the average time spent in isolated confinement and the indefinite nature of the length of the placement. In this case, plaintiff was not transferred to the Wisconsin Secure Program Facility for an indefinite period of time, but rather for the sake of completing his finite sentence for segregation. In light of that fact, plaintiff's case remains more like <u>Sandin</u> than <u>Wilkinson</u>. Accordingly, plaintiff's claim that defendants violated his due process rights by failing to provide him process during the disciplinary proceeding for which he was sentenced to eight days' adjustment segregation and 360 days' program segregation must be dismissed for his failure to state a claim upon which relief may be granted. In light of this conclusion, I need not consider the implications of the fact that plaintiff's sentence was ultimately expunged.

ORDER

IT IS ORDERED that

1. This action is DISMISSED pursuant to 28 U.S.C. § 1915A because the claims in the complaint fail to state a claim upon which relief may be granted.

2. The clerk of court is directed to enter judgment for defendants and close this case.

3 A strike will be recorded against plaintiff in accordance with 28 U.S.C. § 1915(g).

Entered this 3rd day of September, 2008.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge